United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAMANTHA JEAN DUNAGAN,
Plaintiff,

v.

TECHNICAL EDUCATION SERVICES, INC.,
Defendant.

Case No. 26-cv-01969-AMO

**ORDER DENYING PLAINTIFF'S MOTION TO REMAND**

Re: Dkt. No. 14

Before the Court is Plaintiff Samantha Jean Dunagan's motion to remand. The matter is fully briefed and suitable for decision without oral argument. Accordingly, the hearing set for June 18, 2026, was vacated. *See* Civil L.R. 7-1(b), Fed. R. Civ. Pro. 78(b). Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the Court **DENIES** Plaintiff's motion for the following reasons.

## I. BACKGROUND

On January 8, 2026, Dunagan filed a Class Action complaint against Defendants Technical Education Services, Inc., and Technical Education Services, LLC, in the Superior Court for the State of California, County of Alameda, alleging the following causes of action: (1) failure to pay minimum wages (Cal. Lab. Code §§ 204, 1194, 1194.2, and 1197); (2) failure to pay overtime compensation (Cal. Lab. Code §§ 1194, 1198); (3) failure to provide meal periods (Cal. Lab. Code §§ 226.7, 512); (4) failure to authorize and permit rest breaks (Cal. Lab. Code § 226.7); (5) failure to indemnify necessary business expenses (Cal. Lab. Code § 2802); (6) failure to timely pay final wages at termination (Cal. Lab. Code §§ 201-203); (7) failure to provide accurate itemized wage statements (Cal. Lab. Code § 226); and (8) unfair business practices (Cal. Business & Professions Code §§ 17200, et seq.). Compl. (Dkt. No. 1-3).

Defendant Technical Education Services, Inc. ("TES") timely filed a notice of removal under the Class Action Fairness Act ("CAFA") on March 6, 2026. Dkt. No. 1. To demonstrate Plaintiff placed at least $5 million in controversy, CAFA's jurisdictional threshold, TES calculated the amounts in controversy under her class action claims, including her recovery of attorneys' fees. *Id.* ¶ 59. In calculating the amount in controversy, TES used violation rates and assumptions based on Plaintiff's allegations and the available data for the putative class, including putative class size for a portion of the class time period, termination data, and hourly pay rates. Further, TES submitted a declaration from Jean Marie Sapounas, Vice President of Human Resources Business Partner, setting forth and authenticating the relevant employee statistics used to calculate the amount in controversy for CAFA purposes. Dkt. No. 1-4. TES calculated the amount in controversy to be at least $7,139,995.20. Dkt. No. 1 ¶ 35.

Plaintiff filed the instant motion to remand on May 13, 2026. Dkt. No. 14. Therein, Plaintiff contends TES has failed to demonstrate the total amount in controversy exceeds the sum of $5 million as required under CAFA. *Id.*

## II. DISCUSSION

A removing party's notice of removal need include only "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). Thereafter, a plaintiff can contest the amount in controversy by making either a "facial" or "factual" attack on a defendant's amount in controversy allegations. *See Salter v. Quality Carriers, Inc.* 974 F.3d 959, 964 (9th Cir. 2020). A facial attack accepts the truth of a defendant's amount in controversy allegations but asserts that they "are insufficient on their face to invoke federal jurisdiction." *Id.* On the other hand, a factual attack "contests the truth" of the allegations themselves. *Id.*

When considering what a defendant must show to survive a facial attack to jurisdiction, the Ninth Circuit guides that a removal " 'need not contain evidentiary submissions' but only plausible allegations of jurisdictional elements." *Salter*, 974 F.3d at 963 (quoting *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019)). Accordingly, "[f]or a facial attack, the court, accepting the allegations as true and drawing all reasonable inferences in the defendant's

favor, 'determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction.' " *Id*. (quoting *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014)).

The Court considers Plaintiffs' allegations to assess whether the amount in controversy has been established for CAFA jurisdiction.

**A. Meal and Rest Period Violations**

Instead of being required to present evidence supporting its claimed rates of violation, a defendant "is permitted to rely on a chain of reasoning that includes assumptions" to calculate the amount in controversy. *Perez v. Rose Hills Co.*, 131 F.4th 804, 808 (9th Cir. 2025) (citing *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 925 (9th Cir. 2019) (internal quotation marks omitted). "While those assumptions cannot be pulled from thin air, they can be founded on the allegations of the complaint and do not necessarily need to be supported by evidence." *Perez*, 131 F.4th at 808 (internal quotation marks & citations omitted). "The district court's task is simply to determine if the defendant's 'reasoning and underlying assumptions are reasonable.' " *Perez*, 131 F.4th at 808 (quoting *Jauregui v. Roadrunner Transportation Servs., Inc.*, 28 F.4th 989, 993 (9th Cir. 2022)).

Here, TES's assumed violation rates are founded on the allegations of the complaint and supported by the Declaration of Jean Marie Sapounas. *See* Dkt. No. 1-4. Plaintiff alleges Defendants "regularly failed" to provide her and putative class members with timely, legally compliant, and uninterrupted first and second meal periods. Compl. ¶ 52. Moreover, Plaintiff alleges Defendants made it "impossible or impracticable" to take uninterrupted meal periods. Compl. ¶ 52. Plaintiff also alleges Defendants "often" failed to authorize and permit Plaintiff and the putative class members to take legally compliant rest periods, and Plaintiff alleges Defendants "made it impossible or impracticable" to take uninterrupted rest breaks. Compl. ¶¶ 18, 56. Further, Plaintiff alleges Defendants failed to pay her and putative class members the required one additional hour of pay at the regular rate for each meal and rest period violation. Compl. ¶¶ 17, 18, 53, 57.

In its notice of removal, TES assumed a 40% violation rate on Plaintiff's alleged meal and rest period claims, meaning two non-compliant meal and rest periods per workweek for each putative class member, paid out at the statutorily required one hour of pay per violation. Dkt.

No. 1 ¶¶ 38, 41. Using this violation rate and an average hourly rate of $33.08 for the putative class members, TES calculated the meal period amount in controversy as $1,568,785.92; and the rest period amount in controversy as $1,568,785.92. *Id.* Though Plaintiff attacks these estimations as entirely speculative, Dkt. No. 21 at 8, the Court disagrees. Defendant supports its asserted violation rate with Plaintiff's own allegations – they rest on Plaintiffs' assertions that TES "made it impossible or impracticable" to take appropriate breaks. Compl. ¶¶ 52-56. These assumed rates of violation thus fall within the bounds of what other courts have found reasonable. Plaintiff further attacks the persuasive value of the Sapounas Declaration due to a lack of specificity regarding the records reviewed. *See* Dkt. No. 21 at 8. But the Ninth Circuit does not require such evidentiary particularity in estimating the amount in controversy. *See Jauregui*, 28 F.4th at 993-94 (reversing remand when defendant provided "substantial evidence" in support of its amount-in-controversy calculation in the form of a declaration from a senior payroll lead who reviewed the company's payroll data and calculated the potential value of the claims). Accordingly, the court finds the collective amount in controversy on the meal and rest period claims to be a reasonably estimated $3,137,571.84, exclusive of interest and other statutory penalties.

**B. Failure to Pay Minimum and Overtime Wages**

Plaintiff's first and second causes of action for failure to pay minimum and overtime wages allege Defendants "maintained a policy and practice of not paying Plaintiff and the Class for all hours worked, including all overtime wages." Compl. ¶¶ 16, 31-49. TES can rely on "reasonable assumptions" and a "chain of reasoning that includes assumptions" based on reasonable grounds to calculate the amount in controversy. *Anderson v. Starbucks Corp.*, 2020 WL 7779015, *3 (N.D. Cal. 2020); *Herrera v. Carmax Auto Superstores California, LLC*, 2014 WL 12586254, at *6 (C.D. Cal. 2014) ("Defendant cannot be expected to produce evidence of how often overtime violations may occur. Defendant must be entitled to monetize this claim with a reasonable and conservative estimate.").

Here, Plaintiff fails to allege how much minimum and/or overtime wages are owed to her and other putative class members. Plaintiff alleges that she "was typically scheduled to work

5 days in a workweek, and typically in excess of 8 hours in a single workday." Compl. ¶ 14. Plaintiff alleges further that she and the putative class members were required to work "off the clock" and "uncompensated." Compl. ¶ 16. Based on these allegations, TES applied an estimate of 30 minutes of unpaid straight time for 40% of the relevant workdays, meaning each putative class member was underpaid one hour of time per workweek – a conservative assumption which does not take into account the higher unpaid overtime pay rate. Applying this assumption to the relevant and available putative class member data and the average hourly straight time pay rate of $33.08, the amount in controversy for the unpaid wages would be at least $784,392.96. Moreover, when asserting claims for unpaid wages under California Labor Code Section 1194, employees may recover their unpaid wages in addition to liquidated damages "in an amount equal to the wages unlawfully unpaid and interest thereon." Cal. Lab. Code § 1194.2. Factoring in potential liquidated damages for unpaid wages, the amount in controversy could effectively double to be at least $1,568,785.92. Thus, despite Plaintiff's facial attack on TES's calculations, TES's reasonable assumptions demonstrate the amount in controversy on this claim can exceed $1,568,785.92.

**C. Failure to Pay Wages at Termination**

Plaintiff's sixth cause of action alleges Defendants failed to pay Plaintiff and putative class members their wages, earned and unpaid, at the time of discharge, or within 72 hours of their voluntarily resignation. Compl. ¶ 64. Accordingly, Plaintiff alleges she and the putative class members who are former employees are owed for waiting time penalties pursuant to Labor Code Section 203. Compl. ¶¶ 66-67. California Labor Code Section 203 provides, "If an employer willfully fails to pay, without abatement or reduction . . . any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days." Cal. Lab. Code § 203.

Here, TES calculated the estimated amount in controversy is based on the total number of putative class members eligible for Section 203 waiting time penalties during the applicable three-year statute of limitations (meaning putative class members whose employment ended within the

applicable time period), approximately 52 persons, and applying the hourly pay rate average of $33.08 to determine the thirty days of wages penalty. *See* Sapounas Decl. ¶ 3. Plaintiff alleges that she and other non-exempt employees are eligible for 30 days' pay as waiting time penalties. Compl. ¶¶ 66-67. Based on these estimates and calculations and applying the applicable three-year statute of limitations, the potential liability on the sixth cause of action totals $412,838.40.

**D. Failure to Provide Accurate Wage Statements**

Plaintiff's seventh cause of action alleges Defendants intentionally and willfully failed to provide Plaintiff and the putative class members with complete and accurate wage statements as required by Labor Code Section 226. Compl. ¶ 71. California Labor Code Section 226(e) provides that, for an employee who suffered injury as a result of their employer's failure to comply with Section 226(a), he or she is "entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each employee per violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars." Cal. Lab. Code § 226 (e)(1). The statutory period for Labor Code § 226(e) penalties is one year. Cal. Code Civ. Proc. § 340.

Here, for purposes of removal, TES estimates the amount in controversy on Plaintiff's seventh cause of action at $456,000, which is calculated in the following way: approximately 114 putative class members during the relevant time period multiplied by a $4,000 maximum penalty. Plaintiff provides no evidence or authority demonstrating this estimate is unreasonable or implausible and thus fails to undermine TES's showing.

**E. Failure to Indemnify Business Expenses**

Plaintiff's fifth cause of action alleges Defendants violated California Labor Code Section 2802 by failing to reimburse Plaintiff and putative class members for necessary business expenses, including expenses relating to the use of personal cell phones and vehicles. Compl. ¶¶ 19, 59. Plaintiff fails to allege any amount in controversy relating to this claim, compelling TES to determine a reasonable estimate for the amount in controversy. Here, TES reasonably assumed a $25 cell phone reimbursement fee for every month worked by the putative class members during the relevant statute of limitations time period. Dkt. No. 1 ¶ 54; *see Vallejo v. Sterigenics U.S.*,

LLC, 2021 WL 2685348, at *6 (S.D. Cal. 2021) (finding assumption of $25 per month cell phone expenses reasonable). Based on this assumption alone, the amount in controversy on this claim will exceed $136,800. Significantly, TES did not include any amount in controversy estimate based on Plaintiff's claim for unreimbursed vehicle expenses.

## III. CONCLUSION

In sum, TES plausibly establishes that the amount in controversy arising from Plaintiffs' allegations is at least $5,711,996.16, which exceeds the threshold for CAFA jurisdiction. For the foregoing reasons, the Court **DENIES** Plaintiffs' motion to remand the case to California Superior Court.

**IT IS SO ORDERED.**

Dated: September 11, 2026

**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**